UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

WANG XANG XIONG et. al.,                    CIVIL NO. 11-3377 (JRT/JSM)

    Plaintiffs,

v.                                                                    REPORT AND RECOMMENDATION

BANK OF AMERICA, N.A. et. al.,

    Defendants.


This matter is before the Court on Bank of America, N.A., BAC Home Loans Servicing, LP, Mortgage Electronic Registration Systems, Inc., MERSCORP, Inc., the Bank of New York Mellon, and Federal Home Loan Mortgage Corporation's Motion to Dismiss the Complaint [Docket No. 4]; Peterson, Fram and Bergman, P.A.'s Motion to Dismiss [Docket No. 9]; plaintiff's Motion to Remand [Docket No. 20]; and plaintiff's Motion to Amend [Docket No. 22].  William Butler, Esq., appeared on plaintiffs' behalf; Mark G. Schroeder, Esq., appeared on behalf of Bank of America, N.A., BAC Home Loans Servicing, LP, Mortgage Electronic Registration Systems, Inc., MERSCORP, Inc., the Bank of New York Mellon, and Federal Home Loan Mortgage Corporation; and Jared M. Goerlitz, Esq., appeared on behalf of defendant Peterson, Fram and Bergman, P.A.

Defendants' motions to dismiss and plaintiff's motion to remand were referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to

28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1 by the Honorable John R. Tunheim, United States District Judge [Docket Nos. 17, 32].[1]

## I.    BACKGROUND

### A.    The Complaint

Plaintiffs commenced this action in state district court on or about October 28, 2011.  Notice of Removal [Docket No. 1].  Bank of America, N.A., BAC Home Loans Servicing, LP, Mortgage Electronic Registration Systems, Inc., MERSCORP, Inc., the Bank of New York Mellon, Federal Home Loan Mortgage Corporation (collectively, the "Lender/Servicer defendants") removed the matter to the United States District Court on November 17, 2011, claiming diversity of citizenship pursuant to 28 U.S.C. § 1332(a), and an amount in controversy in excess of the $75,000 threshold described by 28 U.S.C. § 1332(b).  Id., ¶¶16-27.  Although the Peterson, Fram & Bergman law firm ("PFB") is a citizen of Minnesota, the Lender/Servicer defendants alleged that PFB was fraudulently joined and its citizenship must be disregarded for the purposes of federal court jurisdiction.  Id., ¶¶17-20.

The facts as alleged in plaintiffs' 206 paragraph, thirteen[2] count Complaint are as follows: plaintiffs are individual homeowners whose real properties are currently subject to non-judicial (foreclosure by advertisement) foreclosure proceedings.  Complaint, ¶¶1-124 [Docket No. 1-1]. The Lender/Servicer defendants all "falsely" claim an interest in the plaintiffs' properties in their various roles as mortgage lenders, servicers, trustees of

---

[1]    Because plaintiffs' Motion for Leave to File an Amended Complaint is so intertwined with defendants' motions to dismiss and plaintiffs' motion to remand, the Court addressed that motion in this Report and Recommendation.

[2]    The Complaint references Counts I-XIV but Count XI is missing.

a securities trust or mortgage assignees in which another lender or servicer claims an interest. Id., ¶¶27-124.

According to the Complaint, plaintiffs executed promissory notes and mortgages "in favor of an entity different from Defendants who now claim the legal right to foreclose on Plaintiffs' homes." Id., ¶28. Plaintiffs claimed that defendants are not now in possession of the original promissory notes and are not otherwise entitled to enforce plaintiffs' original notes. Id., ¶29. Further, "[d]efendants and others securitized and sold Plaintiffs' Original Notes into a 'pooling and service agreement ('PSA'),' in which at least 100 percent of the present value of the total payments due on Plaintiffs' Original Notes were sold to third-party purchasers ('Certificate Holders') of mortgage backed securities." Id., ¶41. Plaintiffs alleged that the Lender/Servicer defendants lacked "valid, clear legal title to the Original Notes" and cannot foreclose on the properties. Id., ¶40.

Plaintiffs claimed that the mortgages are invalid under several theories, almost all of which focus on the notion that the Lender/Servicer defendants were not in possession of the owners' promissory notes at the time of foreclosure. Id., ¶128.

Count I (Quiet Title) alleged that the Lender/Servicer defendants' mortgage liens were invalid because they did not hold the original promissory notes or that the mortgage assignments were invalid. Id., ¶¶125-128.

Count II (Defendants Are Not the Real Parties in Interest) alleged that the Lender/Servicer defendants were not the holders in due course of the promissory notes and as a result would receive no benefit from the foreclosure of plaintiffs' properties. Id., ¶¶ 129-134.

3

Count III (Defendants Have No Legal Standing to Foreclose the Mortgages) alleged that the Lender/Servicer defendants have "no material stake" in the enforcement of the plaintiffs' mortgages because they are not the holders in due course of the promissory notes. Id., ¶¶135-137.

Count IV (Slander of Title) alleged slander of title against both the Lender/Servicer defendants and PFB, stating that the defendants "maliciously published" documents regarding the properties in connection with the foreclosures. Id., ¶¶138-141.

Count V (Conversion) alleged that both the Lender/Servicer defendants and PFB were not entitled to enforce the original promissory notes and were not entitled to receive mortgage payments from the plaintiffs. Id., ¶¶142-146. Plaintiffs claimed that PFB acted as the Lender/Servicer defendants' "agent," thereby "abetting" the conversion. Id., ¶145.

Count VI (Unjust Enrichment) alleged the Lender/Servicer defendants were unjustly enriched based on the plaintiffs' mortgage payments to the Lender/Servicer defendants, to which the Lender/Servicer defendants were not entitled. Id., ¶¶147-150.

Count VII (Civil Conspiracy) claimed that the Lender/Servicer defendants engaged in a civil conspiracy to fraudulently and intentionally misrepresent their status as holders in due course of the original promissory notes, entitling them to foreclose on plaintiffs' properties. Id., ¶¶151-155.

Count VIII (Breach of Fiduciary Duty) alleged that the Lender/Servicer defendants had a fiduciary duty to plaintiffs, which they breached by "failing to deal

honestly and fairly with plaintiffs and by failing to disclose material information." Id., ¶¶156-161.

Count IX (Fraud) alleged that the Lender/Servicer defendants falsely represented to the plaintiffs that they had standing to pursue foreclosure and by recording the assignments of mortgages, notices of pendency of foreclosure and by publishing foreclosure sales notices containing false information. Id., ¶¶162-186.

Count X (Negligent Misrepresentation) alleged that the Lender/Servicer defendants and PFB misrepresented to plaintiffs that they had the right to foreclose and that plaintiffs reasonably relied on defendants' misrepresentations to "forebear from asserting their legal rights to challenge Defendants' ability to enforce the Original Notes and foreclose the Mortgages. . . ." Id., ¶¶187-191.

Count XII[3] (Equitable Estoppel) alleged that the Lender/Servicer defendants and PFB induced the plaintiffs to "forebear from pursuing their legal right to challenge the standing of [  ][4] to foreclose on their homes by representing that Defendants had clear, valid title to Plaintiff's [sic] original notes." Id., ¶200.

Count XIII (Accounting) sought an accounting by the Lender/Servicer defendants "to determine the amount of debt owed, if any, to the [Pooling Service Agreement] and Certificate Holders." Id., ¶206.

Count XIV alleged fraud against PFB, contending that PFB conducted "false and fraudulent foreclosures" against some of the plaintiffs and acted with "reckless disregard

---

[3]     As previously stated, the Complaint contains no Count XI and skips from Count X to Count XIV, and then back to Count XII and Count XIII.  Complaint, ¶¶193-206.

[4]     It appears that plaintiffs' counsel intended to insert the names of the Lender/Servicer defendants here, but failed to do so.

as to the truth of the representation[s]" PFB made to the plaintiffs by stating that their clients (apparently some or all of the Lender/Servicer defendants) owned the debt on plaintiffs' properties or held the promissory notes.  Id., ¶¶194-196.

As relief, plaintiffs sought an order quieting title to the properties, "removing Defendants' invalid liens and determining that Defendants have no estate, interest, or lien on the premises."  Complaint, Prayer for Relief, ¶A.  Plaintiffs sought a declaratory judgment without describing the judgment sought and a refund of their mortgage payments.  Id., ¶¶B, F.

**B.    Defendants' Motions to Dismiss**

Following removal of this case to federal court, the Lender/Servicer defendants and PFB immediately moved to dismiss the Complaint, arguing that plaintiffs' Complaint is based on a legal theory, or variation of a legal theory, that has been rejected by every court in this District to consider it.   Lender/Servicer Defendants' Memorandum in Support of Motion to Dismiss ("Lender/Servicer Mem."), pp. 8-12 [Docket No. 6]; Peterson Fram and Bergman's Memorandum in Support of Motion to Dismiss, ("PFB Mem.") pp. 7-10 [Docket No. 11].  Plaintiffs' counsel, William Butler, has brought dozens of cases in this District alleging that the mortgagees' failure to prove ownership of or an interest in the borrowers' original promissory notes precluded them from pursuing non-judicial foreclosure.  Lender/Servicer Mem. pp. 1-3; PFB Mem., pp. 7-8.  In each case, Butler's theories have been rejected as contrary to the holdings of Jackson v. Mortgage Elec. Reg. Sys., Inc., 770 N.W.2d 487 (Minn. 2009) and Stein v. Chase Home Fin., LLC, 662 F.3d 976 (8th Cir. 2011), which hold that the mortgagee or its assignee need not possess the original promissory note to foreclose a mortgage when a borrower defaults.

See e.g. Blaylock v. Wells Fargo Bank, N.A., Civ. No. 12-693 (ADM/LIB), 2012 WL
2529197 at *8-9  (D. Minn. June 29, 2012) (dismissing plaintiffs' complaint based on
similar theories, noting that Butler "is cautious to avoid using the phrase 'show me the
note' in an apparent effort to distance this present litigation from the more than thirty
similar multi-plaintiff, multi-defendant property cases he has filed this District" and
sanctioning Butler $75,000 for his actions); Peterson v. CitiMortgage, Inc., Civ. No. 11-
2385 (SRN/JJG), 2012 WL 1971138 at *2 (D. Minn. June 1, 2012) (dismissing
Complaint and noting that "the essence of the Complaint is Plaintiff's claim that
Defendants do not have valid title to the original notes for their mortgages and therefore
cannot legally foreclose on their mortgages.  Plaintiffs' theory has been rejected by
every court to consider it, including both the Eighth Circuit. . .and the Minnesota
Supreme Court. . . every judge in this District to have ruled on the merits of these cases
has dismissed them."); Pope v. Wells Fargo Bank, N.A., Civ. No. 11-2496 (SRN/FLN),
2012 WL 1886493 at *2 (D. Minn. May 23, 2012) ("At bottom, Plaintiffs' claim is that
Defendants do not have valid title to the original notes for their mortgages and therefore
cannot legally foreclose on their mortgages.  Plaintiffs' theory has been rejected by
every court to consider it, including the Minnesota Supreme Court."); Karnatcheva v.
JPMorgan Chase, Civ. No. 11-3452 (MJD), 2012 WL 1657531 at *5 (D. Minn. May 11,
2012) (dismissing complaint and stating that "to the extent that Plaintiffs argue the
mortgage liens are invalid because the Bank Defendants did not hold the note,
otherwise referred to as 'show me the note,' such claim has no merit."); Olson v. Bank
of America, N.A., Civ. No. 11-3710 (PAM/FLN), 2012 WL 1660615 at *3 (D. Minn. April
19, 2012) ("[P]laintiffs' argument is that Defendants do not own the notes for Plaintiffs'

mortgages and thus cannot foreclose on those mortgages.  But as Judge Schiltz has so thoroughly discussed in <u>Welk</u>, this argument has no merit whatsoever." (citation omitted)); <u>Dunbar v. Wells Fargo Bank, N.A.</u>, Civ. No. 11-3683 (DSD/FLN), 2012 WL 1110161 at *6 (D. Minn. April 12, 2012) ("[t]he 'possible reasons' that the mortgages are invalid all rest on the same assumption rejected by the Minnesota Supreme Court in <u>Jackson</u> and the Eighth Circuit Court of Appeals in <u>Stein</u>.  This district has repeatedly rejected the same argument.");[5] <u>Welk v. GMAC Mortg., LLC</u>, Civ. No. 11-2676 (PJS/JJK), 2012 WL 1035433 at *3-15 (D. Minn. March 29, 2012) (discussing Butler's theories regarding the invalidity of defendants' mortgage foreclosure proceedings in depth and noting that "the fact that the Eighth Circuit rejected Butler's show-me-the-note theory has not deterred Butler from continuing to file dozens of claims based on that theory.  Nor has Butler been deterred by the fact that his show-me-the-note theory has been rejected by every federal judge that has addressed it to date.")

Additionally, PFB noted that this is Butler's fifth action against it in connection with its role as foreclosure counsel, and courts that have reached the merits of his claims against the firm have determined that Butler fraudulently joined PFB.  PFB Mem, pp. 2-3 (citing <u>Butler v. Bank of America, N.A.</u>, Civ. No. 11-461 (DWF/TNL), 2011 WL 2728321 (D. Minn. July 13, 2011); <u>Larsen v. Bank of America, N.A.</u>, Civ. No. 11-1775 (MJD/JSM) (Report and Recommendation, July 21, 2011, Docket No. 19).[6]  Further,

---

[5]    On April 23, 2012, the Honorable David S. Doty ordered Rule 11 sanctions against Butler in the <u>Dunbar</u> matter.  Order, Civ. No. 11-3683 [Docket No. 42].  Judge Doty's Order cataloged the cases filed by Butler in this district.  Order, pp. 2-3.

[6]    Six days after this Court issued its Report and Recommendation in <u>Larsen</u>, Butler voluntarily dismissed the matter.  Civ. No. 11-775, Docket No. 20.

PFB maintained that all of PFB's actions in connection with the foreclosures at issue were taken consistent with Minnesota law governing non-judicial foreclosure.  Id., pp. 12-13.

In response to defendants' motion, plaintiffs argued that defendants relied on a "flawed analysis" of Jackson to assert that the note and mortgage can be held by different entities and a non-judicial foreclosure can proceed "regardless."  Memorandum in Opposition to Bank Defendants' Motion to Dismiss ("Pl. Mem. in Opp."), p. 8 [Docket No. 15].  Plaintiffs noted that the foreclosure statute requires that the foreclosing entity have the contractual right to do so, and there must be a default triggering the power of sale reflected in the mortgage document.  Id., p. 9.  According to plaintiffs, the Eighth Circuit's decision in In re Banks, 2011 WL 4786635 (8th Cir. 2011) supports their theory that "Jackson stands for the proposition that the mortgage holder needs more than just the recorded mortgage document or assignment to have the right to foreclose under Minnesota law."  Id., p. 11.[7]  Plaintiffs contended that their mortgages are "not valid" and the Lender/Servicer defendants are, therefore, not permitted to foreclose.  Id. Finally, Plaintiffs generally argued that they adequately pled their causes of action and that their Complaint met Fed. R. Civ. P. 8 and 9 pleading standards.  Id., pp. 12-22.

As to PFB's motion to dismiss, plaintiffs responded that PFB has "completely missed the point" of their claims, which focus on the fact that the mortgages the

---

[7]     In Dunbar, Judge Doty noted that In re Banks addressed a creditor's right to enforce a promissory note endorsed in blank; it did not address foreclosure by advertisement.  2012 WL 1110161, n. 6.  Judge Schiltz and Judge Montgomery also rejected Butler's reliance on In re Banks on the ground that it did not address foreclosure by advertisement.  Murphy v. Aurora Loan Servs., LLC, Civ. No. 11-2750 (ADM/JJK), 2012 WL 104543 at *3 (D. Minn. Jan. 12, 2012); Welk, 2012 WL 1035433 at *7.

Lender/Servicer defendants "purported to hold" were invalid and that PFB is not immune from claims that it falsely represented that its clients were entitled to foreclose on plaintiffs' properties.   Plaintiffs' Memorandum in Opposition to [PFB's] Motion to Dismiss, pp. 2, 12-14.

### C.   Plaintiffs' Motion for Remand

Subsequent to plaintiffs' response to defendants' motions to dismiss, the motions were referred by the District Court to the undersigned for the issuance of a Report and Recommendation [Docket No. 17].   This Court then issued an Order and Amended Order setting February 6, 2012, as the date for plaintiffs' response to the motions,[8] February 13, 2012 for defendants' replies, and the hearing for March 8, 2012 [Docket Nos. 18, 19].   On February 7, 2012, plaintiffs served and filed a motion for remand and a motion to amend the complaint [Docket Nos. 20, 22], which was subsequently referred the undersigned for the issuance of a Report and Recommendation [Docket No. 32] and heard on April 2, 2012.

In connection with their motion to remand, plaintiffs argued that the federal court lacked jurisdiction over their claims because the state district court obtained prior, exclusive jurisdiction over the case when the plaintiffs commenced the action in state district court challenging the validity of the mortgages encumbering their properties.[9]

---

[8]      As it turned out, plaintiffs had already responded to defendants' respective motions to dismiss in December, 2011.  See Docket Nos. 13, 15.

[9]      Notably, plaintiffs did not challenge the Lender/Servicer defendants' allegations that there was diversity of citizenship and that PFB had been fraudulently joined to defeat jurisdiction.  Consequently, any such challenge on that basis is waived.  Hacker v. Barnhart, 459 F.3d 934, 937 n.2 (8th Cir. 2006) ("A party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue.") (internal quotation marks and citation omitted).

Plaintiffs' Memorandum in Support of Remand, ("Pl. Remand Mem.") pp. 3-10 [Docket No. 24].   According to plaintiffs, their state court action is an in rem or quasi in rem proceeding in which the state district court exercises exclusive jurisdiction over the plaintiffs' real properties (the res).   Id., pp. 4-9.   Further, plaintiffs asserted that four of the properties at issue in this lawsuit are or have been the subject of unlawful detainer actions (i.e. eviction proceedings) in the state district courts and, therefore, the state courts have exclusive jurisdiction over those properties on this basis as well.   Id., p. 6.

With respect to their eviction proceeding argument, plaintiffs indicated that plaintiffs David and Virginia Kaeding, LuAnn Zaudtke, Erik and Jessika Rotto, and James Fisher had been the subject of eviction proceedings in various state district courts.   Id.   At the hearing, the Lender/Servicer defendants' counsel, Mark Schroeder, stated that he had searched the public records and found that the Fisher unlawful detainer action was filed in state district court on October 31, 2011—before this case was removed on November 17, 2011, but that the Kaeding, Zaudtke and Rotto unlawful detainers were commenced after removal.   Plaintiff's counsel, Butler, responded to this information at the motions hearing that the timing of the unlawful detainer actions was irrelevant to the issue of federal court jurisdiction.   This Court ordered further briefing on the issue.   Order, April 4, 2012, [Docket No. 52].[10]

---

[10]     The argument regarding the impact of the eviction proceedings on this Court's jurisdiction came before Judge Schiltz in Welk.   In that case, Judge Schiltz rejected plaintiffs' effort to remand the matter on the basis of prior exclusive jurisdiction, with one exception.   Welk, 2012 WL 1035433 at *16-18.   Judge Schiltz distinguished between eviction actions initiated before the case was removed to federal court from those initiated after the removal.   Id., *18.   In this regard, two of the three unlawful detainers at issue in Welk were filed after federal court jurisdiction had attached.   Id.   Judge Schiltz determined that the court was not precluded from exercising jurisdiction over those

Plaintiffs raised an additional issue in their reply brief regarding the effect of Torrens status of property on this Court's jurisdiction.  Reply Memorandum in Support of Motion to Remand ("Pl. Reply Mem."), pp. 8-9 [Docket No. 48].  According to plaintiffs, Minn. Stat. § 508.10, which describes how Torrens property is registered, vests the state district court with exclusive jurisdiction over all Torrens property in the state.  Id., pp. 8-10.  Two of the plaintiffs' properties are Torrens.  Id., p. 9; Affidavit of William Butler in Support of Motion to Remand, Ex. 1 (Certificates of Title on the Espey and Xiong properties) [Docket No. 49].  Defendants had no opportunity to brief this issue but flatly rejected this theory at the hearing, arguing that the statute on which Butler was relying merely states that the state district court has jurisdiction over the registration of Torrens property.[11]

---

claims.  Id. at *17. The unlawful detainer against plaintiff Welk, however, was filed before the case was removed.  Id.

Judge Schiltz stayed defendants' motion to dismiss as to Welk's claim and plaintiffs' motion to remand as to Welk's claim pending further briefing on whether an unlawful detainer action is in rem.  Id. at *18.  On August 8, 2012, Judge Schiltz issued his order denying plaintiff's motion to remand and dismissing all of Welk's claims. Judge Schiltz analyzed the jurisdiction question as analogous to a challenge to personal jurisdiction and noted that by agreeing that the eviction would be held in abeyance pending the outcome of the federal court litigation, the parties essentially consented to the jurisdiction of the federal court.  See Welk v. GMAC Mortg., LLC, Civ. No. 11-2676 (PJS/JJK), Order, pp. 7-8 [Docket No. 140].

[11]    Raising new issues in a reply brief is also part of Butler's pattern.  In this regard, in Welk, Judge Schiltz observed that Butler:

> makes claims in his briefs that do not appear in his pleadings; he makes claims during hearing that do not appear either in his briefs or his pleadings; and when ordered to show cause why he should not be sanctioned, he makes claims in his response that he did not make during the hearing or in his briefs or pleadings.  Of course, while all

"Generally, the Court does not consider arguments raised for the first time in a reply."  Berbig v. Sears Roebuck & Co., 568 F. Supp. 2d 1033, 1040 n.10 (D. Minn. 2008).   Nonetheless, because the Torrens issue raised the question of this Court's jurisdiction, the parties were ordered to submit additional briefing on the effect of Torrens status of property on this Court's jurisdiction over the Xiongs' and Espeys' claims.  Order, April 4, 2012.

In their supplemental brief, plaintiffs relied on Matter of Trust Created by Louis W. Hill, 728 F. Supp. 564, 565-66 (D. Minn. 1990)[12] for the proposition that when there is continuing jurisdiction by the state district courts over a matter removed to federal court, the federal court should decline to exercise jurisdiction.  Plaintiffs' Brief in Response to April 4, 2012, Order ("Pl. Suppl. Mem."), pp. 4-6 [Docket No. 55]; see also Pl. Remand Mem., p. 5; Pl. Reply Mem., pp. 5-6.  In addition, plaintiffs contended that the Minnesota state courts have continuing jurisdiction over the property at issue in this case because it is Torrens property, (Pl. Suppl. Mem., p. 6), which is governed by the Minnesota's Torrens registration statute, Minn. Stat. § 508.10.  This statute provides:

> An application for registration shall be addressed to the district court in and for the county wherein the land described therein is situated.  The district court shall have exclusive original jurisdiction thereof, and of all proceedings thereunder, and have full power to inquire into the title of the

---

of this drags on month after month, Butler collects fees from his clients, and his clients live rent-free in their homes.

2012 WL 1035433 at *2.

[12]   Matter of Trust Created by Louis W. Hill has occasionally been miscited in published decisions as In re the Trust Created by Lois W. Hill or In the Matter of the Trust Created by Lois Hill.  To avoid confusion in the future, the Court notes that the case deals with a trust established in 1917 by Louis W. Hill, the son of James J. Hill, the "Empire Builder." http://www.mnhs.org/places/sites/jjhh/history/family.htm.

>land, and any right, title, interest, or estate therein, and any
>lien, charge or encumbrance thereon.  By its decree, the
>court shall adjudge and determine the title to the land, the
>nature, character, extent, and amount of all liens and
>encumbrances thereon, the priority as between the same,
>and remove all clouds from the title.  The district court shall
>have full power and authority to make all necessary orders,
>judgments, and decrees and, for these purposes, the court
>shall be always open.

Minn. Stat. § 508.10.  Plaintiffs maintained that this statute vests the state district court

with exclusive jurisdiction over plaintiffs' registered Torrens properties.   Pl. Suppl.

Mem., p. 12.

In response to all of plaintiffs' theories, the Lender/Servicer defendants argued

that the prior exclusive jurisdiction doctrine had no application where there was no

concurrent state lawsuit, as is the case here.   Lender/Servicer Defendants'

Memorandum in Opposition to Plaintiffs' Motion to Remand ("Lender/Servicer's Mem.

in Opp. to Remand), pp. 3-4 [Docket No. 31].   Indeed, the cases plaintiffs cited in

support of their prior exclusive jurisdiction theory involved multiple lawsuits

proceedings simultaneously in state and federal court.  Id., p. 5 (citing Palmer v. Texas,

212 U.S. 118, 123 (1909) (applying primary exclusive jurisdiction doctrine where there

were concurrent state and federal cases); Nevada v. South Fork Bank of the Te-Moak

Tribe of W. Shoshone Indians, 339 F.3d 804, 810-11 (9th Cir. 2003) (noting that a state

district court had entered a decree and that "the court that was about to interfere with

its administration is a federal district court.").   Further, the Lender/Servicer defendants

noted that eviction proceedings are in personam actions brought against borrowers as

individuals, not actions against property.  Id., p. 6.  Where two in personam actions are

pending, one in state court and one in federal district court "each court is free to

proceed in its own way and in its own time without reference to the proceedings in the other court." Id. (quoting Kline v. Burke Constr. Co., 260 U.S. 226, 230 (1922)).

Additionally, under Minnesota law, title to property cannot be determined in an eviction action; therefore the eviction proceedings can provide no basis for remand because adjudication of plaintiffs' title cannot be accomplished in the eviction proceedings. Id., p. 7 (citing Keller v. Henvit, 18 N.W.2d 544, 547 (Minn. 1945) (precluding determination of title in an eviction proceeding)).

Finally, the Lender/Servicer defendants argued that removal terminated any state court action and that state court actions do not somehow linger on in spite of removal. Id., p. 8 (citing 28 U.S.C. §1446(d)).

In their supplemental brief, the Lender/Servicer defendants restated their argument that the state district court eviction proceedings were in personam. Lender/Servicer Defendants' Supplemental Briefing in Opposition to Remand ("Lender/Servicer Suppl. Mem."), p. 3 [Docket No. 56] (citing and quoting Dahlberg v. Young, 42 N.W.2d 570, 576 (Minn. 1950) ("[a]n unlawful detainer action merely determines the right to present possession and does not adjudicate the ultimate legal or equitable rights of ownership possessed by parties.")). An unlawful detainer action does not invoke questions of prior exclusive jurisdiction because the court in an unlawful detainer action cannot adjudicate issues of title. Id., p. 6.

The Lender/Servicer defendants also rejected plaintiffs' argument that the Torrens registration statute confers exclusive jurisdiction over all matters regarding Torrens property in the state district court. Id., p. 11-15. They contended that a plain reading of the statute indicates that it refers to Torrens registration proceedings and the

15

need to establish proper venue for those proceedings—i.e., that Torrens registration proceedings must be venued in the county where the property is located.  Id., p. 12. Further, even if the legislature intended the statute to vest exclusive and continuing jurisdiction in the state district courts over Torrens property, any such limitation would be barred by principles of Federalism, which prevents states from legislating jurisdiction away from the federal courts.  Id., p. 13 (citing Marshall v. Marshall, 547 U.S. 293, 313-314 (2006); Mullen v. Academy Life Ins. Co., 705 F.2d 971, 975 (8th Cir. 1983); Quintana v. ADC Telecom., Inc., Civ. No. 09-110, 2009 WL 2382981 at *3-4 (W.D. Tex. 2009)).

### D.   Plaintiffs' Motion to Amend Complaint

The plaintiffs moved for leave to amend their complaint to "in order to make it clear that this is not a 'show me the note' case."  Plaintiffs' Memorandum of Law in Support of Motion to Amend ("Pl. Mem. in Support of Amend"), p. 3 [Docket No. 27].

In the Background section of the PAC, plaintiffs sought to add the following:

- Freddie [Federal Home Loan Mortgage Corporation] claims an interest in the Lee Property pursuant to an Assignment of Sheriff's Sale Certificate that was recorded in Hennepin County on June 2, 2011, as document number A9660200. PAC, ¶24.

- Upon information and belief, each Plaintiff's original lender transferred assigned or sold each Plaintiff's Original Note to a separate entity after closing. Id., ¶30.

- Upon information and belief, each Plaintiff's Original Note and Mortgage was transferred, assigned or sold into a trust underlying a mortgage-backed security. Id., ¶31.

- Upon information and belief, every trust underlying a mortgage-back security is governed by an agreement or agreements that create the trust and determine the

16

ownership and servicing of each mortgage and note in the corpus of the trust. Id., ¶32.

- Upon information and belief, by operation of these agreements, each of Plaintiff's Original Notes and Mortgages were transferred, assigned and sold into the corpus of a trust. Id., ¶33.

- Upon information and belief, each trust into which each Plaintiff's Original Note and Mortgage was sold requires the assignment of the Mortgage to the trust. Id., ¶35.

- Upon information and belief, the assignments have not been executed or have not been recorded as required by Minnesota law. Id., ¶36.

- Upon information and belief, the chain of title to Plaintiff's Mortgages is broken and Defendants have no right, title or interest in Plaintiffs' property. Id., ¶37.

- Upon information and belief, each Plaintiff's Original Note is in the possession of a trustee and has not been properly endorsed to the entity now attempting to foreclose on the Plaintiff's home. Id., ¶38.

- Each Plaintiff's Original Note and Mortgage reserve all right to payment and other remedies available through the security instrument to the lender or anyone who takes the Note by transfer. Id., ¶39.

The PAC described the notes signed by each plaintiff and noted that "each Plaintiff's Mortgage reserve[d] the power of sale to the lender." Id., ¶¶39, 40. The PAC referenced and attached copies of each plaintiff's mortgage. Id., ¶40. Each mortgage contained a statement that "Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law." Id. Plaintiffs alleged that "by operation of the above language, the power of sale. . .can only be invoked by the lender or a transferee of the Original Note." Id., ¶41. Plaintiffs pled on

information and belief that Defendants are not the lenders or transferees of the Original Notes.  Id., ¶42.  Plaintiffs further alleged "on information and belief" that the Lender/Servicer defendants asserted the power of sale pursuant to Plaintiffs' mortgages and "[did] not possess and [are] not entitled to enforce the [the mortgages] through acceleration and a foreclosure sale."  Id., ¶¶43-60.  As to all of the plaintiffs, the PAC alleged that they had standing because the Lender/Servicer defendants commenced foreclosure proceedings and in some cases "bid[ ] in an alleged debt at a foreclosure sale as evidenced by the Sheriff's Certificate of Sale."  Id., ¶¶61-77.

The PAC eliminated altogether Counts II (Defendants Are Not the Real Parties in Interest), III (Defendants Have No Legal Standing to Foreclose the Mortgages), and V-XIII of the Complaint (Conversion, Unjust Enrichment, Civil Conspiracy, Breach of Fiduciary Duty, Fraud, Negligent Misrepresentation, Equitable Estoppel, Accounting, and Fraud) against the Lender/Servicer defendants.  The PAC also jettisoned all causes of action against PFB except slander of title, which it retained in Count IV as to both the Lender/Servicer defendants and PFB.  Id., ¶¶97-102.

As to the Lender/Servicer defendants, while Count I of the PAC (Quiet Title) removed the express language found in the Complaint alleging that the mortgagees are not the holders in due course of the promissory notes, it nonetheless continued to assert plaintiffs' original "show me the note" theory.  PAC, ¶81 ("a. The Mortgages are not properly perfected.  b. Defendants are not Note Holders as defined in possession of the Original Notes.  c. Defendants are not entitled to enforce the receive payments on Plaintiffs' Original Notes under the express terms of Plaintiffs' Original Notes and Mortgages.   d. The Notices of Pendency, Powers of Attorney, and Mortgage

Assignments of Mortgages were not executed by an authorized individual.  e. The Assignments of Plaintiffs' Mortgages were invalid.")

Proposed Count II of the PAC (Declaratory Judgment) alleged that plaintiffs' notes and mortgages were placed into a trust underlying a mortgage-backed security. PAC, ¶85.  Based on that allegation, plaintiffs claimed that the Lender/Servicer defendants' attempts to foreclose violated those trust agreements. Id., ¶88.

Count III (Declaratory Judgment) sought a declaratory judgment against the Lender/Servicer defendants regarding who can accelerate the promissory note balances, whether acceleration was made in accordance with the original notes and mortgages and by the correct party, and if acceleration was not proper, the effect of acceleration on the foreclosures.  PAC, ¶96.  The PAC does not allege that the Lender/Servicer accelerated the payments of plaintiffs' mortgages.

In Count IV (Slander of Title) plaintiffs alleged that both the Lender/Servicer defendants and PFB recorded mortgage deeds in the name of a nominee that did not have legal title to either the original note or the mortgages; all of the defendants knew or should have known that the statements in the documents were false; PFB prepared and recorded the foreclosure-related documents without verifying that the person who signed the documents had the authority to do so; and the consideration stated in the documents was exchanged and that the mortgagee's assignee was, in fact, the legal assignee.  PAC, ¶¶97-102.

In summary, the PAC sought to assert four causes of action against the defendants:  A quiet title claim (Count I) and two requests for declaratory judgment

(Counts II and III) against the Lender/Servicer defendants, and a slander of title claim against all the Lender/Servicer defendants and PFB (Count IV).

## II.   ANALYSIS

### A.   <u>Motion to Remand</u>

This Court must resolve questions of jurisdiction before considering the merits of an action.  <u>Dunbar</u>, 2012 WL 1110161 at *2 (citing <u>Crawford v. F. Hoffman-La Roche Ltd.</u>, 267 F.3d 760, 764 (8th Cir. 2001)).  To decide this question, the Court must first decide the issues raised in connection with plaintiffs' motion to remand whether the doctrine of prior exclusive jurisdiction precludes federal court jurisdiction, and whether the state district court has exclusive jurisdiction over those properties owned by plaintiffs Kaedings, Zaudtke, Rottos, and Fisher for which eviction proceedings had been commenced, and the Torrens properties owned by Xiong and Espey.

The federal court to which the action is removed must have original subject matter jurisdiction over the case.  28 U.S.C. § 1441(b).  Federal district courts have subject matter jurisdiction over civil actions that involve a federal question or diversity of citizenship. 28 U.S.C. §§ 1331, 1332.  Federal question jurisdiction exists when the action arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  Diversity jurisdiction exists when the case is between citizens of different states and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).  A party opposing removal may bring a motion requesting that the federal court remand the case back to state court.  28 U.S.C. § 1447(c).  The district court must remand the case back to state court if it determines that the court lacks subject matter jurisdiction.  28 U.S.C. § 1447(c); <u>Martin v. Franklin Capital Corp.</u>, 546 U.S. 132, 134 (2005).  On a motion to

remand, the party seeking removal and opposing remand bears the burden of demonstrating federal jurisdiction.  In re Bus. Men's Assur. Co. of Am., 992 F.2d 181, 183 (8th Cir. 1993).  The Court should resolve any doubt as to the propriety of removal in favor of remand.  Id.  Whether removal is proper is determined by the record as it stands at the time the petition for removal is filed.  See Hatridge v. Aetna Cas. & Sur. Co., 415 F.2d 809, 814 (8th Cir. 1969); Nelson v. Citibank (South Dakota) N.A., 794 F.Supp. 312, 315 (D. Minn. 1992).

### 1.    Prior Exclusive Jurisdiction over Plaintiffs' Claims

The Lender/Servicer defendants argued that the doctrine of prior exclusive jurisdiction did not apply where, as here, there are not two concurrent proceedings. Lender/Servicer's Mem. in Opp. to Remand, pp. 3-6.  Further, an eviction proceeding is in personam, and therefore the doctrine does not apply.  Lender/Servicer's Suppl. Mem., pp. 3-5.

The prior exclusive jurisdiction doctrine holds that "when one court is exercising in rem jurisdiction over a res, a second court will not assume in rem jurisdiction over the same res."  Chapman v. Deutsche Bank Nat'l Trust Co., 651 F.3d 1039, 1043 (9th Cir. 2011) (quoting Marshall v. Marshall, 547 U.S. 293, 311 (2006)).  Plaintiffs argued that because they originally filed the instant suit in state district court challenging the validity of the mortgages encumbering their properties, the state district court has exclusive jurisdiction.  Pl. Remand Mem., p. 10.  According to plaintiffs, it did not matter whether unlawful detainer actions were initiated before or after defendants removed the matter

to federal court because the state district court exercised continuing jurisdiction over the

property.  Pl. Suppl. Mem., p. 5.[13]

Judge Schiltz noted in <u>Welk</u> that the doctrine applies in two circumstances:

> The doctrine of prior exclusive jurisdiction applies in only two circumstances.   First, and most commonly, the doctrine applies when there are multiple proceedings through which different courts are attempting to assert jurisdiction over the same property at the same time.  <u>See</u> <u>United States v. Bank of N.Y. & Trust Co.</u>, 296 U.S. 463, 480–81, 56 S.Ct. 343, 80 L.Ed. 331 (1936) (first-filed state cases took precedence over later-filed federal cases); <u>Penn Gen. Cas. Co. v. Penn. ex rel. Schnader</u>, 294 U.S. 189, 197, 55 S.Ct. 386, 79 L.Ed. 850 (1935) (federal court had jurisdiction over first-filed federal suit, although it had the discretion to abstain in light of the ongoing state liquidation proceedings involving the state insurance commissioner); <u>Palmer v. Texas</u>, 212 U.S. 118, 123, 132, 29 S.Ct. 230, 53 L.Ed. 435 (1909) (first-filed state case took precedence over later-filed federal case); <u>Farmers' Loan & Trust Co. v. Lake St. Elevated R.R.</u>, 177 U.S. 51, 61–62, 20 S.Ct. 564, 44 L.Ed. 667 (1900) (first-filed federal case took precedence over later-filed state case); <u>Chapman v. Deutsche Bank Nat'l Trust Co.</u>, 651 F.3d 1039, 1041 (9th Cir.2011) (per curiam) (certifying question to state court to determine whether concurrent cases—a quiet-title action that was removed to federal court and an unlawful-detainer action that was pending in state court—were both in rem actions).

> Second, and less commonly, the doctrine applies when a court has acquired some form of specialized, continuing jurisdiction over the property.  That continuing jurisdiction,

---

[13]     As stated previously, at the hearing on plaintiffs' motion to remand, this Court ordered the parties to submit supplemental briefs on whether an unlawful detainer action is an <u>in</u> <u>rem</u> or <u>quasi</u> <u>in</u> <u>rem</u> proceeding; whether the date of commencement of the unlawful detainer actions affected this Court's jurisdiction; to provide information on the status of the Fisher unlawful detainer action; and whether, if the Court lacks jurisdiction over the Kaedings, Zaudtke, the Rottos or Fisher because of the eviction proceedings, the Court must remand all of the claims to state court.  Order, April 4, 2012 [Docket No. 52].  Since that order was issued, other courts in this district have concluded that eviction proceedings are <u>in personam</u> and the doctrine of prior exclusive jurisdiction does not apply in a case challenging a foreclosure that is subsequently removed to federal district court.  <u>See</u> cases cited, <u>infra.</u>

> even in the absence of a pending case, precludes other courts from exercising jurisdiction over the same property in later cases.  See State Eng'r v. S. Fork Band of the Te–Moak Tribe, 339 F.3d 804, 810–11 (9th Cir.2003) (federal court lacked jurisdiction where water rights were under state court's continuing jurisdiction pursuant to a 70–year–old decree); In re Trust Created by Hill, 728 F.Supp. 564, 567–68 (D.Minn.1990) (federal court lacked jurisdiction where state court's continuing jurisdiction and supervisory responsibility over trust had attached decades earlier).

Welk, 2012 WL 1035433 at *17.

This Court concludes that the doctrine of prior exclusive jurisdiction has no application in a removal case.  First, there is no "concurrent" proceeding in state district court that could create a jurisdictional question.

Second, when this suit was filed in state court, only the Fisher eviction proceeding was pending in state district court.  Therefore, the doctrine is completely inapplicable to the claims made on behalf of plaintiffs Kaedings, Zaudtke and Rottos, and on behalf of all other plaintiffs against whom no eviction proceedings have been commenced.  Furthermore the state district court has not acquired any specialized, continuing jurisdiction over plaintiffs' property such as that described in Matter of Trust Created by Louis W. Hill, 728 F. Supp. at 567 ("[M]innesota state courts often have continuing jurisdiction and supervisory responsibilities over trusts.")

Finally, an unlawful detainer action in state court is an in personam proceeding, and consequently, the doctrine does not apply.  Blaylock, 2012 WL 2529197 at *7 ("the state eviction proceedings are in personam . . . and so do not fall under the auspices of the prior exclusive jurisdiction doctrine . . . . Plaintiff's argument that the state court has specialized, continuing jurisdiction over these properties is specious.  The case cited by Plaintiffs, In re Trust Created by Louis Hill . . . dealt with an express trust and therefore

under Minnesota statute was the exclusive province of state courts.  Foreclosures are not a subject matter over which state courts have continuing, specialized jurisdiction. Just as Butler has been rejected by other federal judges to whom he has repeated this same argument and this exact citation, his arguments are rejected here."  (internal citations omitted)); Pope, 2012 WL 1886493 at *5 ("[m]oreover, contrary to Plaintiffs' argument, an eviction action is in personam, not in rem, seeking an order against an individual to vacate the property.  Whether the eviction actions are pending, they have no bearing on Plaintiffs' claims here, which seek to stop a foreclosure and quiet title, something that is not at issue in an eviction proceeding.  And as Judge Doty recently noted, 'even if the state were exercising ongoing in rem jurisdiction in the present action, Congress expressly allows removal of actions where goods or an estate have come under the control of the state court.'  Plaintiffs' arguments are without merit and the doctrine of prior exclusive jurisdiction does not apply." (internal citations omitted)); Olson, 2012 WL 1660615 at *3 ("Whether or not those [eviction] actions are still pending (or were pending at the time this lawsuit was filed), they have no bearing on Plaintiffs' claims here, which seek to stop a foreclosure and 'quiet title,' something that is not at issue in an eviction proceeding").  See also Lilyerd v. Carlson, 499 N.W.2d 803, 812 (Minn. 1993) (noting that an unlawful detainer action determines only "present possessory rights, and usually does not bar subsequent action involving title or equitable rights of parties); Dahlberg, 42 N.W.2d at 576  ("An unlawful detainer action merely determines the right to present possession and does not adjudicate the ultimate legal or equitable rights of ownership possessed by the parties.  It is not a bar to an action involving the title.").

24

In summary, the doctrine of prior exclusive jurisdiction cannot defeat the Lender/Servicer defendants removal of this case to this Court.  Plaintiffs' motion for remand on that basis should be denied.

## 2.    Exclusive State Court Jurisdiction Over Torrens Property

The only legal support plaintiffs offered for their theory that the Minnesota Torrens registration statute precludes this Court from exercising jurisdiction over the Xiong and Espey properties was Matter of Trust Created by Louis W. Hill.  Pl. Supp. Mem., p. 12.  The difference between this case and Hill is that Hill involved a trust, over which, as noted, Minnesota state courts "often have continuing and supervisory responsibilities."  728 F. Supp. at 567.[14]  The Torrens registration statute itself is clear that it confers exclusive jurisdiction to the state district court for proceedings regarding the registration of Torrens property, and nothing more.  There is no hint that the statute conveys exclusive and continuing jurisdiction in the state district court regarding all issues relating to property that happens to be Torrens property.  See Olson, 2012 WL 1660615 at *3 ("Plaintiffs also contend that because one of the properties is registered under Minnesota's Torrens statute the state court has exclusive jurisdiction over that property.  This argument is wholly without merit and deserves no discussion.").  Remand of the suit as to Xiong and Espey on the basis that their property is Torrens property fails.

For all of these reasons, this Court concludes that removal of this suit to this Court was proper, and plaintiff's motion for remand should be denied.

---

[14]    Judge Tunheim noted the distinction between In Re Trust Created by Louis Hill and cases involving real property.  Cartier v. Wells Fargo Bank, N.A.. Civ. No. 11-2168 (JRT/AJB), 2012 WL 2449944 at *2, n.5 (D. Minn. June 27, 2012).

B.      **MOTIONS TO DISMISS**

1.      **Legal Standard**

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true.  <u>Ashley County, Ark. v. Pfizer, Inc.</u>, 552 F.3d 659, 665 (8th Cir. 2009).  In addition, "the court must resolve any ambiguities concerning the sufficiency of the plaintiffs' claims in favor of the plaintiffs, and give the plaintiffs the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in their complaint."  <u>Ossman v. Diana Corp</u>., 825 F. Supp. 870, 880 (D. Minn. 1993) (internal quotation marks and citations omitted).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, (2007) and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  This pleading requirement does not require detailed factual allegations.  <u>Martin v. ReliaStar Life Ins. Co.</u>, 710 F. Supp. 2d 875, 886 (D. Minn. 2010) (citing <u>Twombly</u>, 550 U.S. at 555).  On the other hand, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  <u>Iqbal,</u> 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 555).  Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 129 S. Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S., at 570).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 677 (quoting Twombly, 550 U.S. at 556).   "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Ritchie v. St. Louis Jewish Light, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

In summary, the pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (internal quotation marks and citations omitted).

"Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend." Michaelis v. Neb. State Bar Ass'n., 717 F.2d 437, 438-39 (8th Cir. 1983).   Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate. See McLean v. United States, 566 F.3d 391, 400 (4th Cir. 2009) ("to the extent . . . that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice.   Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); McKesson HBOC, Inc. v. New York State

Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (a pro se litigant should be given chance to amend complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."); Ikechi v. Verizon Wireless, Civ. No. 10-4554 (JNE/SER), 2011 WL 2118797 at *5, n.6 (D. Minn. April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011 WL 2118791 at *3 (D. Minn. May 25, 2011) (adopting the Report and Recommendation of Magistrate Judge Rau regarding dismissal of plaintiff's fraud claims for failure to satisfy the particularity requirement of Rule 9(b)).

For the reasons described below, this Court has concluded that dismissal of plaintiffs' claims should be with prejudice and plaintiffs should not be allowed to amend their complaint.

### 2.    Analysis[15]

Plaintiffs' argument that defendants are liable to plaintiffs because they are not in possession of the plaintiffs' original promissory notes has been universally rejected by the courts of this district.  See e.g., cases cited in Section I.B, supra.  Recasting this suit as a "quiet title" or "slander of title" (or "declaratory judgment" action via the PAC) will

---

[15]    In their motion to amend the Complaint, plaintiffs retained only two of the thirteen original claims against the Lender/Servicer defendants – a quiet title claim (Count I) and a slander of title claim against all the Lender/Servicer defendants and PFB (Count IV). Voluntary deletion of the other eleven claims suggests that plaintiffs have conceded that these claims were devoid of merit.  Nevertheless, for completeness, the Court briefly addresses all thirteen claims that are the subject of defendants' respective motions to dismiss.

not save these claims.   Such titles are only window dressing, intended to create a mirage from which to argue that this case is somehow different from the "show me the note" cases that have been dismissed.

The law is well-settled: "[i]n order to foreclose by advertisement, both record and legal title 'must concur and co-exist at the same time in the same person or persons who alone have the authority to foreclose the mortgage' regardless of other equitable interests vested in third parties.  Jackson, 770 N.W.2d at 497; Stein, 662 F.3d at 980. An assignment of a promissory note is not an assignment of a legal interest in a mortgage.  Jackson, 770 N.W.2d at 497 n.5.  "[A] party can hold legal title to the security instrument without holding an interest in the promissory note."   Id. at 500.  "[A]ny disputes that arise between the mortgagee holding legal title and the assignee of the promissory note holding equitable title do not affect the status of the mortgagor for purposes of foreclosure by advertisement."  Id. at 501.

In Count I, plaintiffs alleged that the mortgages are invalid because the defendants were not in possession of the original notes, were not the holders of the original notes, and were not the holders in due course of the original notes.  Complaint, ¶128.  These claims fail under Jackson and Stein.  Additionally, general allegations regarding the invalidity of the mortgages, such as the mortgages were not perfected, the required notices were not executed by an authorized person, and the assignments of the mortgages were invalid, are conclusory statements and not supported by any facts. Accordingly, plaintiffs' quiet title claim (Count I) fails under Rule 12(b)(6).

Counts II (Defendants Are Not the Real Parties in Interest),[16] III (Defendants Do Not Have Standing to Foreclose Mortgages), IV (Slander of Title), V (Conversion), VI (Unjust Enrichment), IX (Fraud), X (Negligent Misrepresentation), XII (Equitable Estoppel) and XIII (Accounting)[17] similarly fail as they are nothing more than a restatement of the quiet title claims—i.e., that the Lender/Servicer defendants do not hold the original notes and consequently, could not foreclose.

The slander of title claim against PFB (Count IV) also fails as a matter of law because plaintiffs failed to plead any of the elements of slander of title except that the foreclosure documents were published.  See Paidar v. Hughes, 615 N.W.2d 276, 279-80 (Minn. 2000) (under Minnesota law, slander of title requires a plaintiff to establish: (1) a false statement; (2) was published to others; (3) was published maliciously; and (4) the publication caused Plaintiff pecuniary loss in the form of special damages.).  A malicious statement is a "groundless disparagement of the plaintiff's title or property .... made without probable cause."  Quevli Farms, Inc. v. Union Sav. Bank & Trust Co., 226 N.W. 191, 192 (Minn. 1929).  Additionally, to the extent that plaintiffs have alleged that PFB is liable for slander of title because they did not verify certain information in the foreclosure documents, this Court has rejected that argument in the past and rejects it

---

[16]   "Real party in interest" is not a cause of action.  Dunbar, 2012 WL 1110161 at *7 n.10 ("As this court has noted, real party in interest . . . [is] not [a] cause[ ] of action.") (citing Jerde v. Wells Fargo, Civ. No. 11-2666 (PAM/FLN), 2012 WL 206271 at *1, n.1 (D. Minn. Jan. 24, 2012) ("As the Honorable Ann D. Montgomery of this District recently noted, these two claims "are not causes of action in Minnesota."  Murphy v. Aurora Loan Servs., LLC., Civ. No. 11–2750, slip op. at 6 (D. Minn. Jan. 12, 2012).  The Court will therefore dismiss these claims without further discussion.").

[17]   "Accounting" is not a separate cause of action "but a word used to describe the process of determining the amount of damages in the breach of contract action."  Moore v. Medtronic, Inc., Civ. No. 99-2066 (ADM/AJB), 2001 WL 1636248 at *3 (D. Minn. July 30, 2001).

again for the very same reasons.  See Larsen, Report and Recommendation, p. 9, 14 ("In sum, PFB owed no duty to the plaintiffs to investigate the facts underlying the documents it prepared based on the information it received from its clients and cannot be liable to the plaintiffs, even assuming that there were errors or omissions in those documents.").  Accord., Adorno v. CitiMortgage, Inc., Civ. No. 12-55 (DWF/JJG), 2012 WL 2395322 at *3 (D. Minn. June 25, 2012) (dismissing plaintiffs' complaint against PFB for slander of title)

Civil conspiracy (Count VII) "involves a combination of persons to accomplish either an unlawful purpose or a lawful purpose by unlawful means." Anderson v. Douglas County, 4 F.3d 574, 578 (8th Cir. 1993) (citing Harding v. Ohio Cas. Ins. Co., 41 N.W.2d 818, 824 (Minn. 1950)).  "To prove a conspiracy, a party must specifically present facts tending to show agreement and concerted action.  Conclusory allegations are insufficient." Id.  Here, plaintiffs' claim of civil conspiracy is completely bereft of facts to support the finding of an agreement or concerted action among all of the defendants.  The claim should be dismissed.

Dismissal of Count VIII (Breach of Fiduciary Duty) is warranted because it is well-established that lenders have no fiduciary duty to their customers. Klein v. First Edina Nat. Bank, 196 N.W.2d 619, 623 (Minn. 1972).

"Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend." Michaelis, 717 F.2d 437, 438–39 (8th Cir.1983).  Nonetheless, when it does not appear that "even under the most liberal of standards, that the documents state a claim for which relief can be granted," dismissal with prejudice is appropriate. White v. United States, 588 F.2d 650, 650 (8th Cir.1978).  As discussed in

the next section, this Complaint cannot be rescued through amendment.  Therefore, the Court recommends dismissal of all thirteen causes of action in the Complaint with prejudice.

### C.    MOTION FOR LEAVE TO AMEND

#### 1.    Legal Standard

Federal Rule of Civil Procedure 15(a) provides that "the court should freely give leave when justice so requires."   The determination as to whether to grant leave to amend is entrusted to the sound discretion of the trial court.  See, e.g., Niagara of Wis. Paper Corp. v. Paper Indus. Union Mgmt. Pension Fund, 800 F.2d 742, 749 (8th Cir. 1986) (citation omitted).  The Eighth Circuit has held that "[a]lthough amendment of a complaint should be allowed liberally to ensure that a case is decided on its merits, there is no absolute right to amend."  Ferguson v. Cape Girardeau Cnty, 88 F.3d 647, 650–51 (8th Cir. 1996) (citing Thompson–El v. Jones, 876 F.2d 66, 67 (8th Cir. 1989); Chesnut v. St. Louis Cnty, 656 F.2d 343, 349 (8th Cir. 1981)).  Denial of leave to amend may be justified by "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party."  Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

When, as here, futility is raised as a basis for opposing any proposed amendments to a complaint, the court must determine whether the proposed claims state a claim for relief at this stage of the case.  See Zutz v. Nelson, 601 F.3d 842, 850 (8th Cir. 2010) ("Denial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure.") (citation and internal quotation omitted); <u>In re Senior Cottages of Am., LLC</u>, 482 F.3d 997, 1001 (8th Cir. 2007) (to deny a motion to amend on the ground of futility "means that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion."); <u>United States ex rel. Gaudineer & Comito, L.L.P. v. Iowa</u>, 269 F.3d 932, 936 (8th Cir. 2001) ("The denial of leave to amend based on futility means that the court found that the amended complaint failed to state a claim. . . ."), <u>cert. denied</u>, 536 U.S. 925 (2002).  Thus, "in reviewing a denial of leave to amend we ask whether the proposed amended complaint states a cause of action under the <u>Twombly</u> pleading standard . . . ." <u>Zutz</u>, 601 F.3d at 850–51.

### 2.   Analysis

Plaintiffs seek to amend their Complaint to make it apparent that it is not a "show me the note case." Pl. Mem. in Support of Amend, p. 3.  In this regard, plaintiffs argued that the PAC clarifies that their claims are not based only on the Lender/Servicer defendants' lack of possession of the promissory notes, "but [on] the actual chain of title to the property and the complicated transactions through which their notes and mortgages were sold into mortgage-backed securities." <u>Id.</u>  At the motion hearing, their attorney, Butler, explained that the PAC was based on a theory that although the plaintiffs' mortgages contained a power of sale, this power of sale was somehow contingent on the lenders' possession of the promissory notes and mortgages.  Because the lenders were not in possession of the original notes and mortgages, Butler maintained that they "falsely" bid in the debt at the sheriff's sale.

As previously set out in more detail, (<u>see</u> Section I.D, <u>supra</u>),the PAC alleged: the original notes and mortgages were transferred into a trust underlying a mortgage-

backed security governed by an agreement that created the trust and determined the ownership and servicing of each mortgage and note in the trust,   ( PAC, ¶¶31, 32); each trust required the endorsement of the original note to the trust and the assignment of the mortgage to the trust, (id., ¶¶34, 35);   the assignments were not properly executed or recorded and that as a consequence the chain of title to the plaintiffs' properties was broken, (id., ¶36); and the notes were not properly endorsed to the Lender/Servicer defendants attempting to foreclose (id., ¶39).

The PAC then quoted language from plaintiffs' notes and mortgages.  PAC, ¶39 ("In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed. . . dated the same date as this Note, protects the note holder from possible losses which might result if [the borrower does not] keep the promises which I make in this Note."); ¶40 ("Lender at its option may. . . invoke the power of sale and any other remedies permitted by Applicable Law.").  Based on this language, the PAC alleged that only the lender or transferee of the original notes can invoke the power of sale and the Lender/Servicer defendants are not the lenders or transferees of the original notes.  Id., ¶¶41, 42.  Additionally, the PAC claimed that the Lender/Servicer defendants do not have and are not entitled to enforce the original notes and therefore, cannot "exercise rights in the security instrument securing payments on the Original Notes."  Id., ¶¶43-59.

The PAC eliminated all causes of action against PFB except slander of title.  PAC, ¶¶97-102.  This claim is now based exclusively on the allegations that PFB failed to verify the information reflected in its clients' foreclosure documents, (PAC, ¶100), and PFB's preparation of the foreclosure documents.  Id., ¶101.

The Lender/Servicer defendants asserted that the proposed amendments as to them were futile, as they rested on the same legal theory as in the Complaint—that a mortgagee of record cannot conduct a non-judicial foreclosure without additional proof that it holds the promissory note or has been authorized by the noteholder to conduct the foreclosure.  Lender/Servicer Defendants' Opposition to Plaintiffs' Motion to Amend the Complaint, pp. 1-2 [Docket No. 33].

PFB argued that plaintiffs' newly-styled slander of title claim against it was again futile because PFB is immune from suit for its actions in preparing the foreclosure documents.   PFB's Memorandum in Opposition to Motion for Leave to Amend Complaint, pp. 6-8 [Docket No. 35].

This Court finds that the proposed amendments to the quiet title and slander of title causes of action, as well as the addition of two declaratory judgment causes of action, fail to state a claim as a matter of law and plaintiffs' motion for leave to amend should be denied on that basis.

For starters, plaintiffs' muddled argument regarding the lenders' power of sale ignores the fact that each of the mortgages at issue named MERS or another entity as the Lender's nominee and the nominee of the Lender's successors and assigns, and that MERS (or the mortgagee's assignees) was given the power of sale.  See, e.g., PAC, Ex. 1, pp. 1-2 (mortgage of Jua Thao Xiong and Wang Xang Xiong) ("'MERS' is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. . . TRANSER OF RIGHTS IN THE PROPERTY.  This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of

the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property. . . .").[18]

Moreover, to the extent that plaintiffs continue to maintain throughout the PAC that the power of sale was contingent on the Lender/Servicer defendants' possession of the promissory notes, that argument simply re-circulates the already rejected "show me the note" theory.

With these general observations in mind, the Court now turns specifically to the four counts set out in the PAC,

Count I (Quiet Title), while eliminating the express language found in the Complaint alleging that the mortgagees are not the holders in due course of the promissory notes, is nothing more than a rehash of plaintiffs' original "show me the note" theory.  PAC, ¶81.  For the reasons previously articulated, this cause of action is futile.  See Section I.B., supra; Section II.B.2, supra; see also Murphy v. Aurora Loan Servs., Inc., Civ. No. 11-2750 (ADM/JJK), 2012 WL 104543 (D. Minn. Jan. 12, 2012) (dismissing complaint drafted by Butler which contained a quiet title count very similar to the quiet title count in the PAC.  Compare Murphy v. Aurora Loan Servs., Inc. Complaint, ¶¶54-57 [Docket No. 6] with PAC, ¶¶78-81); Blaylock, 2012 WL 2529197 at *3 (setting forth analysis of the quiet title allegations by Butler, including a quiet title

---

[18]   PAC Exhibits 2-15 to the PAC contain virtually the identical language.

claim which tracks the quiet title claim in the PAC, and rejecting all of plaintiffs' claims as unsupported).

Count II of the PAC (Declaratory Judgment) alleged that their notes and mortgages were placed into a trust underlying a mortgage-backed security.  PAC, ¶85. Based on that allegation, plaintiffs claimed that the Lender/Servicer defendants' attempts to foreclose violate those trust agreements.  Id., ¶88.  As an initial matter, this Court finds that this count is so vague that it is difficult to understand what, exactly, plaintiffs are alleging, and accordingly, these allegations do not meet the Rule 8(a) pleading standard.  In any event, even if the notes and mortgages were part of a trust, a borrower is not a party to a trust agreement and has no standing to enforce it,  Blaylock, 2012 WL 2529197 at *5 (citations omitted).

Count III sought a declaratory judgment regarding who can accelerate the promissory note balances, whether acceleration was made in accordance with the original notes and mortgages and by the correct party, and if acceleration was not proper, the effect of acceleration on the foreclosures.  PAC, ¶96.  The PAC does not allege that the Lender/Servicer accelerated the payments of plaintiffs' mortgages.

Judge Montgomery addressed and rejected the same claim in Blaylock, stating:

> Count III of Plaintiffs' Complaint requests declaratory judgment on who can accelerate the promissory note balances, whether acceleration was properly pursued under the mortgages and notes, and whether the foreclosures are valid. Because the mortgagors' rights are not affected by any potential dispute between the note-holders and mortgage-holders in this case, see Kebasso [v. BAC Home Loans Serv., LP], 813, F.Supp.2d [1104] 1113 [D. Minn. 2011], Plaintiffs lack standing to challenge their foreclosures under this theory.  Additionally, Plaintiffs' Complaint is devoid of allegations that their foreclosures were accelerated, let alone improperly accelerated.  Accord Welk, 2012 WL 1035433, at

> *11 ("As for Butler's argument that the notes reserve the power to accelerate solely to the note holder ... it has nothing to do with plaintiffs' claims in this case. Nowhere ... do plaintiffs allege that their loans were improperly accelerated."). The only mention of acceleration states that the Defendants "do[ ] not possess and [are] not entitled to enforce Plaintiffs [ ] Original Note[s] through acceleration and a foreclosure sale." Compl. ¶¶ 30–35. This is still another reprise on Butler's discredited "show me the note" theory, and as such warrants no further discussion.   Count III is dismissed.

Blaylock, 2012 WL 2529197 at *6.  In a footnote, Judge Montgomery observed:

> Moreover, permitting Plaintiffs to seek judicial determination of the validity of a foreclosure by advertisement would in effect render non-judicial foreclosures meaningless, as courts would be in the role of interpreting which party could foreclose and whether acceleration was proper. Minnesota Statute § 580.02 does not require proof of the right to accelerate or proper acceleration as an enumerated condition for a valid foreclosure, and as such, Count III is not a valid legal theory.

Id., n.2.  This Court finds Judge Montgomery's reasoning persuasive and on that basis finds that Count III is futile.

Count IV (Slander of Title) alleged that defendants improperly recorded their interests in plaintiffs' mortgages in the name of a nominee when they did not have possession of the original notes or mortgages.   PAC, ¶98.   Again, as to the Lender/Servicer defendants, this reference to possession of the notes is an untenable variation of plaintiffs' "show me the note" theory and has no merit, and the claim regarding the mortgages is belied by the language of the mortgages themselves which expressly permit assignment of the mortgages to MERS, the party which effectuated the foreclosures.

As to PFB, again, the PAC fails to allege any actions by PFB that could constitute slander of title and the Court is persuaded that allowing plaintiffs to re-plead this count

would be futile.  As previously noted, PFB owed no duty to plaintiffs to ensure that the information in the foreclosure documents was accurate.

For all of these reasons, this Court has finds that the proposed amendments to the Complaint are futile and plaintiffs' motion should be denied on that basis.

Finally, in addition to futility, this Court may also consider the moving party's bad faith and the creation of undue delay in deciding whether to grant a motion for leave to amend.  <u>Sanders</u>, 823 F.2d at 216 (8th Cir. 1987).

In connection with their opposition to plaintiffs' motion for leave to amend, the Lender/Servicer defendants' counsel submitted a declaration setting out facts that supported his clients' position that the motion for leave to amend was a delay tactic intended to line the pockets of plaintiffs' counsel, Butler, and to keep plaintiffs in their homes, even though there was no legal basis for challenging the foreclosure proceedings.   Declaration of Mark G. Schroeder [Docket No. 34].   According to Schroeder, Butler solicits homeowners facing foreclosure to make an upfront payment to him of $4,000 and monthly payments of $400 for as long as they can stay in their homes.  <u>Id.</u>, ¶2.[19]  In light of the unmistakable futility (if not frivolity) of the claims asserted in the PAC, this evidence strongly suggests that Butler's real motive in moving to amend the Complaint was delay and personal financial gain.  Such conduct amounts

---

[19]   Judge Schiltz was deeply troubled by Butler's marketing practices, which seem to drive how he conducts litigation (<u>i.e.</u>, the longer Butler can multiply the legal proceedings and avoid dismissal, the longer his clients stay in their homes and the longer he collects his $400 per month payment).  <u>Welk</u>, 2012 WL 1035433 at *24 (noting that evidence submitted by defendants regarding Butler's marketing practices suggests "that Butler's clients may be paying him, not for bringing legitimate claims, but simply for each month he delays foreclosure by tying up mortgagees in frivolous court proceedings.").

to bad faith and surely postponed the disposition of this case.  For those additional reasons, the motion to amend the Complaint should be denied.

## III.    RECOMMENDATION

For the reasons set forth above, IT IS RECOMMENDED THAT:

1.    Bank of America, N.A., BAC Home Loans Servicing, LP, Mortgage Electronic Registration Systems, Inc., MERSCORP, Inc., the Bank of New York Mellon, Federal Home Loan Mortgage Corporation's Motion to Dismiss the Complaint [Docket No. 4] be **GRANTED**;

2.    Peterson, Fram and Bergman, P.A.'s Motion to Dismiss [Docket No. 9] be **GRANTED**;

3.    Plaintiffs' Motion to Remand [Docket No.20] be **DENIED**;

4.    Plaintiffs' Motion for Leave to Amend Complaint [Docket No. 22] be **DENIED;**

5.    This suit be **DISMISSED WITH PREJUDICE**.


Dated: August 10, 2012                         *Janie S. Mayeron*
                                               JANIE S. MAYERON
                                               United State Magistrate Judge

### NOTICE

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 24, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within fourteen days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.